IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY ROGERS, | : | Case No. 1:08-cr-02 |
| Petitioner, | : | Judge Susan J. Dlott |
| v. | : | **ORDER DENYING SECOND PETITION FOR WRIT OF CORAM NOBIS** |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

This matter is before the Court on Petitioner Mary Rogers' Petition for Writ of Coram Nobis (Doc. 105.) This is her second petition for a Writ of Coram Nobis and her third collateral attack on her criminal conviction. For the reasons that follow, her petition will be **DENIED**.

"The writ of *coram nobis* 'provides a way to collaterally attack a criminal conviction for a person ... who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241.'" *United States v. Castano*, 906 F.3d 458, 462 (6th Cir. 2018) (quoting *Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013)). The writ of coram nobis is an extraordinary writ "limited to 'extreme cases' in which there were 'fundamental flaws in the proceedings.'" *Id.* (quoting *United States v. Denedo*, 556 U.S. 904, 916 (2009)). Petitioner must show that there was an error that, if corrected, "probably would have altered the outcome of the challenged proceeding." *Pilla v. United States*, 668 F.3d 368, 372 (6th Cir. 2012). Furthermore, "*coram nobis* relief is generally not appropriate for claims that could have been raised on direct appeal." *Castano,* 906 F.3d at 464.

Like her previous two collateral attacks, Rogers' petition focuses mainly on attacking the existence of a $4,000,000 loan from National City Bank which underlies her criminal

1

conviction.[1] The Court has rejected this claim in numerous previous cases. *See, e.g., Carter v. United States Attorney's Office*, Case No. 1:16-cv-530; *Carter v. United States Department of Justice*, Case No. 1:17-cv-248; *Carter v. National City Bank*, Case No. 1:17-cv-508; *CBST Acquisition, LLC v. Department of Justice*, Case No. 1:18-cv-162; *Carter v. Commissioner*, Case No. 1:18-cv-400; *Carter v. PNC Bank*, Case No. 1:18-cv-706; *Rogers v. National City Bank*, Case No. 1:18-cv-825; *Rogers v. PNC Bank*, Case No. 1:18-cv-889; and *TD Investments LLC v. National City Bank*, Case No. 1:21-cv-337.

For years, Rogers, her co-conspirator Orlando Carter, and affiliated entities have alleged that because neither the Office of the Comptroller of the Currency ("OCC") nor the United States Attorney's Office recently has produced paperwork for the $4,000,000 loan from 2004, the loan never existed.[2] Carter and Rogers attempt to characterize this lack of paperwork availability years later as "new evidence" that the debt never existed or that PNC conspired to fraudulently mislead federal agents into believing the $4,000,000 debt existed.[3] As the Court has explained numerous times, this contention lacks merit both factually[4] and legally.[5] These prior orders have sufficiently set out the Court's reasoning. As such, Rogers' petition on this basis is denied.

Rogers does raise three new arguments in her Petition. First, she claims that she was improperly ordered to pay restitution to the IRS when she had in fact already paid the IRS the money she owed. She claims that the Court was unaware that she had already paid her

---

[1] National City Bank has been purchased by PNC bank.
[2] *See, e.g., Carter v. United States Attorney's Office*, Case No. 1:16-cv-530, Doc. 22 (entitled in part "Notice of Deception" and attaching as exhibit A the letter received from the OCC).
[3] *See, e.g., CBST Acquisition, LLC v. PNC Bank, N.A.*, Case No. 1:19-cv-06, Doc. 1 at PageID 13–14.
[4] *See United States v. Carter,* Case No. 1:08-cr-51, Doc. 150; *Carter v. United States Attorney's Office,* Case No. 1:16-cv-530*,* Doc. 23*; Carter v. United States Department of Justice,* Case No. 1:17-cv-248, Docs. 43 and 48*; Carter v. National City Bank,* Case No. 1:17-cv-508*,* Docs. 55 and 67*; CBST Acquisition, LLC v. Department of Justice,* Case No. 1:18-cv-162, Docs. 40 and 41*; Carter v. Commissioner,* Case No. 1:18-cv-400, Docs. 38 and 40*; Carter v. PNC Bank,* Case No. 1:18-cv-706, Docs. 35 and 39*; Rogers v. National City Bank,* Case No. 1:18-cv-825, Doc. 20*; Rogers v. PNC Bank,* Case No. 1:18-cv-889, Doc. 4.
[5] *See, e.g., CBST Acquisition, LLC v. PNC Bank, N.A.,* Case No. 1:19-cv-06, Doc. 17 at PageID 131–165.

outstanding taxes in full. The record demonstrates otherwise. At her sentencing the Court asked whether "the actual tax due . . . has now been paid?" (Doc. 87 PageID 587–88.) Defendant responded "[t]hat's correct." (Doc. 87 PageID 588.) The Court was aware that Defendant had paid the amount owed to the IRS. The Judgement ordered, as a condition of her supervised release, that she must pay restitution to the IRS "[i]f not already satisfied." (Doc. 42 PageID 278.) The Court did not include the IRS in the restitution order. The amount of restitution ordered by the Court consisted only of $4,000,000 to be paid to National City Bank and the mandatory $200 special assessment. (Doc. 42 PageID 279.) Furthermore, if Rogers believed that the Judgement in this case required her to double-pay her taxes, she could have raised this claim on direct appeal. Therefore, *coram nobis* relief is not appropriate for this claim.

Rogers also claims that, because PNC Bank had acquired National City Bank by the time of her sentencing, the Court erred in ordering Rogers to make payments to National City Bank rather than PNC Bank. To the extent this was an error, all of the facts were known at sentencing. Rogers could have raised this issue on direct appeal, and so *coram nobis* relief is not appropriate.

Finally, Rogers claims that an FBI agent involved in the original case told a third party that the government wanted to indict John Boehner, the former Speaker of the House of Representatives. She claims that this alleged statement proves that the government had a motive to fabricate evidence against her. She claims that the government was required to turn over this evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). It is currently unclear in this circuit whether Brady material must be disclosed prior to entering into a plea agreement with a defendant. *Robertson v. Lucas*, 753 F.3d 606, 621 (6th Cir. 2014); *Miller v. Gettel*, No. 22-1034/1046, 2023 WL 2945340 at *7 (6th Cir. April 14, 2023). However, the Court need not consider whether there is an obligation to turn over exculpatory evidence prior to entering into a

3

plea agreement because Rogers has not explained how the alleged statement is exculpatory. She argues that the alleged statement establishes that the United States had a motive to fabricate the four-million-dollar loan. This is, at most, impeachment evidence which could be used to cast doubt on government testimony. It is well established that the United States does not need to turn over impeachment evidence prior to entering into a plea. *United States v. Ruiz*, 536 U.S. 622, 633 (2002).

For the reasons set forth in this order, all related cases, and in the Court's prior orders in this case, the Court hereby **DENIES** Rogers' Second Petition for Writ of Coram Nobis (Doc. 105).

**IT IS SO ORDERED**.

Dated: 8/11/2023        S/Susan J. Dlott
                        Judge Susan J. Dlott
                        United States District Court